# Exhibit A

# FALCONAIR

## ACMI CHARTER CONTRACT
### Contract # 09-137

---

This AGREEMENT is made this 4th day of November 2009 by and between:

- Southern Sky Air and Tours, LLC dba DIRECT AIR and TOURS, LLC ("DIRECT") a South Carolina LLC with its principal offices located at 1600 Oak Street, Suite B, Myrtle Beach, SC, 29575

and

- Falcon Air Express, Inc., ("FALCON") a Florida Corporation with its principal offices located at 2601 NW 105 Avenue, Miami, FL, 33172.

**WHEREAS:**

FALCON will charter to DIRECT two (2) MD83 series aircraft ("Aircraft") as identified in Section 3 and FAA certified and qualified Aircraft, Crew, Maintenance, and Insurance necessary for the operation of the Aircraft, in accordance with the itinerary as provided by DIRECT, no less than 14 days prior to the first departure. For consideration of FALCON's agreement to provide the foregoing services, DIRECT shall pay to FALCON, on demand, all costs and fees in accordance with "Exhibit A" attached hereto. DIRECT's obligation to pay all such amounts shall be absolute and unconditional, unless such obligation is terminated pursuant to the express provisions of this Agreement. DIRECT is obligated to remit payment on the date identified as the payment date on each invoice. DIRECT's failure to pay on the payment date shall be constituted as a material breach of this Agreement.

DIRECT's obligation to pay this same shall not be affected or reduced by any circumstances, including without limitation, any set-off, counter claims, recoupment, defense, or other right which DIRECT may have against FALCON, other than as expressly provided in this Agreement.

IT IS AGREED as follows:

1. **TERM AND SCOPE OF AGREEMENT**

   1.1 The Term of this Agreement shall be for the periods identified in Exhibit "A".

   1.2 DIRECT agrees to guarantee payment for services throughout the Term of the Agreement unless such obligation is terminated pursuant to the express provisions of this Agreement, or in the case of an ongoing and material breach of this Agreement by FALCON.

2. **ITINERARY**

   2.1 The price of this charter Agreement is based upon the proposed itinerary submitted by DIRECT. Any costs resulting from any deviation from such itinerary shall be for the account of DIRECT. FALCON acknowledges that flight schedules will be provided by DIRECT on a 30 day basis, and destinations of flights may change over the Term of this Agreement, without any change to the charter price per block hour. However, in the event that substantial deviations, reduction of scheduled hours per month or change of base location shall cause FALCON to incur additional costs not contemplated in this Agreement or results in a significant reduction in actual block hours flown by FALCON per month *(identified as being below the monthly guarantee for any aircraft)*, the Parties shall agree to renegotiate a new ACMI rate. Increased costs to include additional crews

FALCON: _____ DATE: 11/5/09     DIRECT: _____ DATE: 11/05/09

1

# FALCONAIR

## ACMI CHARTER CONTRACT
## Contract # 09-137

---

required to operate a schedule differing from the one provided. The parties shall have seven (7) days to renegotiate a new ACMI rate. In the event the Parties do not reach an agreement within the time frame, **FALCON** shall be under no obligation to continue under the terms of this Agreement.

2.2 **DIRECT** shall guarantee **FALCON** the minimum block hours identified in Exhibit "A".

2.3 Parties agree that in the event the cycle ratio identified as the flight hours divided by landings for any 60 day period for all operations of any particular aircraft falls below 1.2, **DIRECT** shall pay to **FALCON** an additional $100 for any segment during that 60 day period below 1.2. This reconciliation will be presented on a separate invoice to be paid within five (5) days of delivery.

3. **AIRCRAFT**

   3.1 **DIRECT** shall charter from **FALCON** two (2) MD-83 aircraft configured with 155 (8F/147Y) passenger seats.

   3.2 Aircraft shall be delivered to **DIRECT** all white with blue tail. Any additional livery and/or stencil to the aircraft shall be the sole financial responsibility of **DIRECT**.

   3.3 Operational Conditions Permitting, the maximum take-off weight is 160,000 lbs. and maximum landing weight is 130,000 lbs.

4. **PAYMENTS**

   4.1 All amounts due and payable by **DIRECT** hereunder shall be paid in U.S. Dollars by wire transfer of immediately available funds to the bank and account specified in "Exhibit A" hereto or such other location as **FALCON** shall designate in writing to **DIRECT** during the Term.

   4.2 **FALCON** and **DIRECT** will work together and agree on fixed block hours for all flights during the Term. Parties shall use the block hours identified in Schedule Exhibit B during the first 30 days. Thereafter every 30 days and until the end of Term, the fixed block hours shall be the same as the actual block hours flown the previous 30 days. Actual block hours will not be reconciled.

   4.3 Any additional invoice(s) that are identified as for the account of the **DIRECT**, above what is included and agreed upon herein such as third party service providers, **FALCON** shall immediately forward such invoice to **DIRECT**. **DIRECT** agrees it shall pay said invoice and in the event a lien is placed on **FALCON** aircraft for services rendered for the benefit of **DIRECT**, **DIRECT** shall immediately cause such lien to be removed.

   4.4 <u>Monthly Guarantee:</u> **DIRECT** shall be responsible for payment of the minimum monthly guarantee for any aircraft identified in Exhibit "A". Payment of this guarantee is irrespective of any offsets or claims of **DIRECT** against **FALCON**. Except in the case of a continuing and material breach of this Agreement by **FALCON**, or where such minimum guarantee is terminated pursuant to a specific provision of this Agreement.

5. **NON-PAYMENT**

FALCON: _____ DATE: 11/5/09      DIRECT: _____ DATE: 11/05/09

2



## ACMI CHARTER CONTRACT
Contract # 09-137

**5.1** FALCON has no obligation to perform any scheduled or charter flight unless payment amounts set forth in "Exhibit A" have been paid to FALCON.

### 6. AIRCRAFT OPERATIONAL CONTROL AND REGULATIONS

**6.1** FALCON will provide the Aircraft noted in Section 3 and properly crewed in accordance with FAA regulations, with maintenance and insurance. DIRECT and/or Agents will observe all operating rules and regulations of FALCON, and shall comply with all reasonable instructions of FALCON's employees and/or agents. DIRECT understands and agrees that at all times the aircraft and its crew shall be under the **EXCLUSIVE COMMAND** of FALCON and FALCON's **PILOT IN COMMAND**. DIRECT further understands and agrees that at all times the aircraft shall be under the **OPERATIONAL CONTROL**, as defined in the FAR's, of FALCON. FALCON may refuse to transport or may remove any passenger if such refusal or removal is reasonably necessary for the safety and comfort of the other passengers or if such passenger is creating a hazard to himself, to the Flight, or to other persons or to property. In the event of such refusal or removal, FALCON shall not be required to refund any charges paid by DIRECT.

### 7. FLIGHT SCHEDULE

**7.1** FALCON shall adhere to the schedule of arrivals and departures as reasonably established by DIRECT and subject to alterations as instructed by DIRECT.

### 8. CONSEQUENTIAL DAMAGES

**8.1** FALCON shall use its best efforts to provide a flight ready aircraft in order to adhere to the Flight Schedule provided by DIRECT. However, FALCON shall not be liable for any consequential and/or indirect damages and costs that are the result of an operational delay or flight cancellation. Operational Delays may include any mechanical issue, crew legalities or other operational issue that may cause the actual take-off time to differ from the Flight Schedule. Damages include, but are not limited to, any passenger compensation in any form, additional costs for any services or Government imposed fees or compensations. Further, FALCON shall not be financially liable or responsible for any consequential and/or indirect damages and/or claims resulting from negligence or misconduct by any third party providing any type of service. This indemnification shall have no effect with respect to any of the foregoing arising out of the willful misconduct or gross negligence of FALCON.

**8.2** FALCON shall not be liable for any costs that are the result of Operational delays that occur as the result of weather conditions, airport operations, gate assignments, or aircraft routing.

### 9. SUBSTITUTE AIRCRAFT

**9.1** FALCON may, with prior notice to DIRECT, substitute a similar Aircraft with a minimum of 150 passenger seats. In the event that the substitute aircraft has less than 155 passenger seats and said flight to be substituted has more than 150 passengers booked, FALCON shall be responsible for the purchase of commercial tickets for those additional 5 passengers. FALCON shall not be responsible for any other costs or fees associated with the transport of any passenger other than the commercial airline ticket. FALCON'S responsibility for locating subservice are governed solely

FALCON: _____ DATE: 11/5/09    DIRECT: _____ DATE: 11/05/09

3



## ACMI CHARTER CONTRACT
Contract # 09-137

by Section 9.3.

9.2  Substitution will be made by FALCON if necessary due to mechanical, operational or technical causes.

9.3  In the event that mechanical or technical failure makes it impossible for FALCON to perform in accordance with the provisions herein and if such failure causes a flight delay of 6 hours or more, FALCON agrees to use its best efforts to help DIRECT obtain adequate alternative transportation (sub-service), MD80 series or similar aircraft with a minimum of 150 passenger seats subject to the Terms of Paragraph 9.1, for DIRECT (cost will be at present market value). DIRECT will have no obligation to accept the provision of the services outlined herein from any company other than FALCON. However, DIRECT shall not arbitrarily refuse an FAA approved flight ready aircraft with 150 seats or more from another operator or various operators. DIRECT's right to refuse shall not in any way be yielded in an unreasonable or arbitrary manner.

9.4  In the event of a sub service requirement, FALCON will be responsible for the sub service ACMI cost only and not to exceed the ACMI rate identified in "Exhibit "A". All other expenses, as outlined in Section 14.3 of this Agreement, related to the operation of the flight are the sole responsibility of the DIRECT as per the terms herein. In the event that the ACMI rate for the sub service aircraft is more than the ACMI rate identified in "Exhibit "A", both FALCON and DIRECT will split the cost equally of such ACMI rate per block hours flown. In any event, FALCON shall have no obligation to provide alternative sub-service of any kind for the greater of 5 days or 40 Block Hours. FALCON shall notify DIRECT of its ability to procure an Aircraft from its fleet after the 2nd day of sub-service in order to allow DIRECT ample time to insure the procurement of alternative services and to insure the smooth transition of operators and the stability of DIRECT's operations.

9.5  DIRECT shall be consulted and in agreement with respect to alternate transportation when it becomes necessary or reasonably indicated under the current circumstances.

10.  **ALTERNATE ROUTING**

10.1  If for any reason FALCON determines, prior to a given flight departure, that the landing facilitates at any point on the itinerary of the charter are inadequate for a safe operation, or if a landing is prohibited or restricted by law, statue or regulation, FALCON may substitute in place thereof the nearest landing point at which, in FALCON's sole judgment, suitable landing facilities are available and landing can be made, provided DIRECT agrees accordingly. FALCON shall incur no liability for consequential damages or costs that are incurred as the result of an alternative landing point having been selected by FALCON.

11.  **FORCE MAJEURE**

11.1  FALCON shall not be liable for any loss, injury, damage or delay suffered by DIRECT or any of its passengers or their baggage, due to any flight interruption, delay, or cancellation caused by riots, wars, civil commotions, strikes, labor disputes, weather conditions, acts of God, public enemies, quarantine, or due to the absence or cancellation of any necessary government approvals or any other causes whatsoever which are beyond the control of FALCON or its employees.

FALCON: _____ DATE: 11/5/09    DIRECT: _____ DATE: 11/05/09

4



## ACMI CHARTER CONTRACT
Contract # 09-137

---

**12.  IMMIGRATION AND CUSTOMS**

  12.1  FALCON assumes no responsibility for compliance by Flight passengers with Immigration and Customs laws of each country from through, or to which a flight is operated pursuant to this Agreement. DIRECT will hold FALCON harmless and indemnify FALCON for any fines, violations or penalties imposed by the Immigration Authorities of each country with jurisdiction to exert such fines or penalties. DIRECT will assume all liability with regards to the imposition of fines and/or penalties as well as the attorney's fees and costs of defending the same before the courts or governmental body of each country imposing any fines or penalties. DIRECT will use its best efforts to obtain any documentation, evidentiary materials or witnesses that may aid FALCON in the defense of all fines or penalties imposed.

**13.  INSPECTION**

  13.1  If required, passengers and/or DIRECT shall attend to and remain solely responsible for the inspection of all passenger baggage, checked or unchecked, by Customs officials or any other government officials. FALCON shall not be liable to any passengers or to DIRECT for any loss or damage resulting from the failure to comply with the requirement.

**14.  OPERATIONS**

  14.1  FALCON shall be responsible for the operation of the Aircraft during the Term of this Agreement in full compliance with all pertinent regulations of the United States Federal Aviation Administration (FAA), or such other federal, state, local and foreign rules of flight and operations which are now or may from time to time become applicable.

  14.2  FALCON will operate under the authority of a current FAR Part 121 Air Carrier certificate and a Department of Transportation (DOT) section 401 Economic Certificate.

  14.3  Notwithstanding anything to the contrary outlined in this Agreement, in addition to the amounts due and owing by DIRECT as set forth in "Exhibit A" hereof, FALCON shall be solely responsible for costs identified as Aircraft, Crew (to include all crew costs), Maintenance and Insurance. DIRECT shall pay and be solely financially responsible during the Term for the following:

  (a)  <u>All aircraft consumables:</u> including, but not limited to fuel, potable water, toilet chemicals and removal.

  (b)  <u>All passenger related dry goods:</u> including but not limited to bathroom tissue, paper towels, hand soap and antibacterial soap.

  (c)  <u>All passenger service functions:</u> including but not to limited to, ticketing, baggage handling, passenger check-in, documentation, manifests, security screening, any and all TSA passenger and/or security requirements, any and all necessary passenger and

FALCON: _____ DATE: 11/5/09    DIRECT: _____ DATE: 11/05/09



## ACMI CHARTER CONTRACT
### Contract # 09-137

baggage screening, loading, offloading, distribution to passengers and lost baggage claims.

(d) **Taxes and Fees:** including but not limited to all federal excise taxes, US domestic taxes, US arrival taxes, US departure taxes, passenger facility charges (PFC's), segment fees, Immigration, APHIS, 9/11 security fees, customs fees, foreign taxes/fees and any additional passenger taxes/fees and all other associated fees, costs and expenses identified as "ACMI" is the responsibility of **DIRECT**.

(e) **Airport and Station charges:** including but not limited to, airport landing fees, airport parking fees, all airport fees associated with the flight(s), ticket counter fees, aircraft deicing and all deicing fluids and services, navigational fees, overflight fees, any and all communication fees, landing rights and/or permits, aircraft cleaning and ground support equipment charges and any and all handling fees associated with the flight(s).

**DIRECT** attests that their contracted Ground Handlers, Fuelers, Ground Security Coordinators, Caterers and any and all contracted service providers are duly trained and qualified by their Governmental and/or Airport authorities, to operate in a safe manner, the ground equipment necessary to service the contracted aircraft from **FALCON** at each airport to be used and operated into and out of, and mentioned in the itinerary and schedule attached in the addendum of this Agreement. Said operators of ground support equipment shall have adequate Liability Insurance and be certified in the operation of said equipment. **FALCON** shall be presented with a copy of Third Party service provider's insurance certification showing full and adequate coverage upon request.

Further **CHARTERER** shall indemnify and hold **FALCON** harmless from any and all fines, violations, penalties and/or claims of any type asserted against or incurred by **FALCON** resulting from any negligence and/or misconduct by any service provider.

(f) **FALCON** hereby requires a release of lien from any identified service provider or seller of goods who has sold goods or provided service for the completion of any of **DIRECT**'s flights during the Term. Failure of any service provider to execute such document shall release **FALCON** from any further obligation relating to this Agreement. **FALCON** contemplates requesting such releases from supplier of fuel and ground handling services.

(g) **Passenger food and beverage service:** including but not limited to, meals, catering transportation, liquor and all beverages and any and all items/supplies necessary to properly cater/serve passenger meals and beverages including but not limited to ice, cups, condiments, utensils, napkins, etc.

(h) **Operational Permits:** **DIRECT** shall be solely responsible for obtaining the necessary operational permits and licenses for **FALCON** to complete the operation of the Flight. Operational Permits may be defined as any permission, license or permit regarded as necessary by any appropriate Government body or agency for the legal operation of the Flight. **FALCON** shall use its most reasonable efforts in assisting **DIRECT** in securing said Operational Permit limited by the cost of the Operational Permit which shall be the sole responsibility of **DIRECT**.

FALCON: _____ DATE: 11/5/09    DIRECT: _____ DATE: 11/05/09



ACMI CHARTER CONTRACT
Contract # 09-137

(i) DIRECT shall assist in making available maintenance storage space and office space at each of the aircraft bases identified in Exhibit "A". Storage space shall be deemed adequate by FALCON for the proper storage of equipment of parts for the maintenance of the aircraft. The office shall have internet, fax and phone connections.

More specifically, DIRECT shall be financially responsible for any and all expenses incurred in connection with the operation of the flights contemplated in this agreement and the transaction contemplated hereby.

14.4 DIRECT shall agree to use only certified and insured providers of the services contemplated in Section 14.3 including but not limited to passenger handling, baggage handling, ground support and fueling. DIRECT shall be financially responsible for direct and consequential damages to the Aircraft or to FALCON directly resulting from the negligence of any DIRECT employee in the event such negligence is identified as the contributing cause.

14.5 In the event that FALCON assists DIRECT in securing any of the above mentioned services, FALCON shall act solely as DIRECT's agent and shall not be held liable for any consequential or incidental damages resulting from the procurement of such services. DIRECT shall hold FALCON harmless and indemnify FALCON in the event any damages occur to third parties from the procurement of such services. Services contracted shall be for the account of the DIRECT. FALCON shall present DIRECT with invoices for any services contracted.

14.6 FALCON shall have an in-flight mechanic onboard each flight. The in-flight mechanic shall be considered a crew member for purposes of this Agreement and will be seated in the cockpit or jump seats during flight.

14.7 FALCON has the right to deny any service provider access to the Aircraft if at the reasonable discretion of FALCON it is deemed that said provider's services might negatively impact the safe and efficient operation of the Aircraft. FALCON has the right to audit and inspect any service provider to assure FALCON's operational manuals are being followed.

14.8 FALCON shall coordinate with DIRECT's operational contact person. DIRECT shall be advised and shall approve any expenditure done in connection with any FALCON request for service other than the services identified in Paragraph 14.3.

15. **COMPLIANCE WITH CHARTER REGULATIONS**

15.1 Except as otherwise provided for in this Agreement, DIRECT and its agents, passengers and contractors shall be deemed to have notice, and shall comply in all respects with Part 208 of the Economic Regulations, of the United States Department of Transportation ("DOT"), 14 C.F.R. Part 208; Part 372 and 380 of the Special Regulations of the DOT, 14 C.F.R. Parts 372 and 380, and all the applicable laws, rules or regulations (hereinafter collectively "Charter Regulations") to the extent applicable, the Charter regulations in effect the date hereof. In the event that any passenger or prospective passenger on any Flights has failed to observe such Charter Regulations, FALCON shall have the power and right, at its option, to refuse to board any of the passengers or perspective passengers for such Flight upon such failure by such passenger without any liability or penalty against FALCON of any kind. DIRECT shall cooperate and shall cause any travel agent, tour operator, or other principal or agent involved with the charter to provide any information or

FALCON: _____ DATE: 11/5/09    DIRECT: _____ DATE: 11/05/09

7



**FalconAir**

ACMI CHARTER CONTRACT
Contract # 09-137

---

certification required by the Department of Transportation in connection with the Flight.

16. **PASSENGER AND BAGGAGE LIMITATIONS**

   16.1  Passengers and baggage will be carried within the space and weight limitations of the MD-83 as indicated in Section 3.2, which limitations have been established by the manufacturer. FALCON will have no responsibility for any baggage exceeding the space and weight limitations of the Aircraft. The cost of transporting any additional baggage other than those that may be safely transported according to the manufacture's limitations and the operational requirements of the flight segment shall be the responsibility of DIRECT.

17. **TERMINATION**

   17.1  This Agreement shall terminate as described in Exhibit "A" of this Agreement, and may be earlier terminated upon the occurrence of one of the following:

   17.1.1  By FALCON for any DIRECT breach or default of any material term or condition herein, including but not limited to its payment obligations. FALCON shall provide DIRECT with written notice of default. Thereupon, DIRECT shall have three business (3) days to cure such default.

   17.1.2  By DIRECT for any FALCON breach or default of any material term or condition herein. Any failure by FALCON to provide the aircraft, or similar aircraft, whether as a result of total loss, seizure by any authority, impounding, or technical difficulties, for a period of five (5) consecutive days, shall constitute such a material default, and shall be considered suitable cause for termination of the Agreement by DIRECT, if DIRECT desires to elect such option.

18. **INSURANCE**

   18.1  FALCON shall maintain liability insurance in the amount of not less than Five Hundred Million United States Dollars ($500,000,000 U.S. Dollars) and add DIRECT as an additional insured under the policy. Any failure by FALCON to maintain such insurance in full force and effect shall constitute a material breach of this Agreement. A copy of the insurance certificate shall be sent to DIRECT.

19. **FOREIGN TAXES**

   19.1  DIRECT shall promptly pay all taxes, assessment, license fees, registration fees, fines, penalties, duties, withholding, levies, sales, use, personal property or other taxes or charges of whatever nature, and all interest and penalties in respect thereof (hereinafter "Taxes") levied or assessed by any state local or federal government or agency incurred or assessed by or against FALCON or DIRECT in respect of this Agreement and only applicable to flying of this contract, provided, however, that DIRECT shall not be liable for any income taxes of FALCON. This obligation shall not extend to any criminal conduct on the part of FALCON its officers or employees.

   19.2  In respect to this Agreement only and solely for departures from foreign ports, if any, DIRECT

FALCON: _____ DATE: 11/5/09    DIRECT: _____ DATE: 11/05/09

8

**FALCONAIR**

ACMI CHARTER CONTRACT
Contract # 09-137

shall be pay all applicable passenger departure taxes unless such taxes are payable directly by passengers at the point of departure.

20. **DIRECT AS PRINCIPAL**

   20.1   This Agreement is entered into by **DIRECT** on its own behalf. An individual passenger shall not have the right to claim any refund of the charter price or portions thereof from **FALCON** except as may be specifically provided for herein. All passenger claims shall be the sole financial responsibility of the **DIRECT**, except where such passenger liability is directly caused by any criminal act, intentional wrongdoing, or other act of gross negligence on the part of any **FALCON** officer or employee.

21. **APPLICABLE STATUTES**

   21.1   This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. If any provision of this Agreement is rendered inoperative or illegal by operation of law or otherwise, all other provisions contained herein shall remain in full force and effect, and in such cases the principal of sever ability shall govern. **FALCON** has designated Renaldy J. Gutierrez as Service Agent in the event of any litigation between the parties regarding the terms and conditions set forth in this agreement. If either **FALCON** or **DIRECT** shall commence any action to enforce the Terms and provisions of this Agreement, the prevailing party in any such action shall be entitled to recover its costs and expenses, including reasonable attorney's fees, incurred in connection with such action from the other party.

22. **WRITTEN AGREEMENT**

   22.1   This Agreement supersedes all prior agreements, if any, between the parties with respect to the subject matter, and fully sets forth the understanding of the parties. Any change or amendment to this Agreement shall be in writing fully executed by both **FALCON** and **DIRECT**.

23. **STRICT PERFORMANCE**

   23.1   The failure of either party at any time during the Term of this Agreement to require the performance by the other of any of the Terms or provisions of this Agreement shall in no way affect the right of that party thereafter to enforce such Terms or provisions nor shall the waiver or any preceding breach of any such Term or condition as a consulting waiver of such Term or condition.

24. **TITLES**

   24.1   Titles are inserted in this Agreement for convenience only, and it is agreed that they do not define, limit or describe the scope or Intent of this Agreement, and are not to be deemed a part thereof.

25. **NOTICE**

   25.1   All notices and other communication between the parties provided for or permitted hereunder shall be in writing and shall be sent, electronic mail return receipt requested or postage prepaid by

FALCON: _____ DATE: 11/5/09   DIRECT: _____ DATE: 11/05/09

9



## ACMI CHARTER CONTRACT
Contract # 09-137

---

registered or certified mail, with a copy facsimile, addressed as follows:

**FALCON AIR EXPRESS, INC.**
2601 N.W. 105 Avenue
Miami, FL 33172

Phone: (305) 592-5672
Fax: (786) 497-4702

**Direct Air and Tours, LLC.**
1600 Oak Street, Suite B
Myrtle Beach, SC 29575

With Copy to:

Boyd Law Firm LLC
ATTN: Reese Boyd III, Esq.
PO Box 15358
Myrtle Beach, SC 29587
Fax: 843-238-2112

26. **HOLD HARMLESS AND INDEMNITY**

26.1 Parties shall indemnify each other and hold each other, its directors, officers, shareholders, employees and agents (collectively, the "Indemnities") harmless from and against any and all fees, fines, penalties, attorneys fees, liens, claims, losses, liabilities, suits, judgments, expenses (regardless of when the same shall be made or incurred, whether during or after the Termination of this Agreement) for or on account of or arising from or in any way connected with injury to or death of any person entity, resulting from or arising out of this Agreement and the transactions contemplated hereby, provided, however, this indemnification shall have no effect with respect to any of the foregoing arising out of the willful misconduct or gross negligence of any Indemnities.

26.2 The Parties, shall not be liable, except as set forth in Section 26.1, to each other and hereby expressly waive any and all rights or claims with respect to, any fees damage, costs, claims, or liabilities in contract or in tort, or otherwise as a result or any act of omission, or failure to act by either Party. The Parties hereby acknowledge and agree that the sole remedy in the event of a default or other breach by a Party hereunder shall be the termination of the Agreement and the return by FALCON of any monies remitted for which services have not been provided and for payment in full for all services provided along with any cancellation fees owed to FALCON. Parties agree there shall be no compensation for consequential or incidental damages of any kind by either Party. However, this indemnification shall have no effect with respect to any of the foregoing arising out of the willful misconduct or gross negligence of the Parties.

26.3 DIRECT shall indemnify and hold FALCON, its directors, officers, shareholders, employees and agents harmless from and against any and all fees, fines, penalties, attorneys fees, liens, claims, losses, liabilities, suits, judgments, expenses made or incurred during or after the Termination of this Agreement for on account of, or arising from, or in any way connected with fines or penalties incurred as a result of DIRECT's action or inaction and levied against FALCON for violations associated solely with the performance of this Agreement. This indemnification is limited only to the responsibilities under Section 14.3. Should FALCON receive a violation notice caused by DIRECT, the Parties shall cooperate in reducing or eliminating any penalties or fines associated with such notice. In the event that a penalty or fine is levied upon FALCON caused by DIRECT's action or non-action, DIRECT shall immediately remit to FALCON the amount necessary to cure such penalty or fine. Failure to do so shall constitute a material breach of this Agreement and FALCON shall be under no obligation to continue its performance of this Agreement.

FALCON: _____ DATE: 11/5/09    DIRECT: _____ DATE: 11/05/09

10



ACMI CHARTER CONTRACT
Contract # 09-137

27. **MONIES OWED**

   27.1  Parties agree that in the event of a termination, cancellation, or material breach on the part of either party, any and all monies owed for past performance or other charges at that time shall be immediately payable upon demand by the respective party in readily available US funds payable via wire transfer to the bank account identified by each party. This obligation to pay shall not be subject to any claims or offset DIRECT may have against FALCON, except where such claim or offset is contemplated by this Agreement, or where such obligation is otherwise limited by another provision of this Agreement.

28. **AMENDMENT AND WAIVER**

   28.1  This Agreement may be amended or modified at any time and in all respects by an instrument in writing executed by FALCON and the DIRECT.

29. **LEGAL**

   29.1  This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Florida, without reference to its conflict of law rules. If any action is brought at law, in equity or arbitration, including an action for declaratory or injunctive relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees actually incurred, whether in arbitration, pretrial, trial or appellate levels, set by the Court or the arbitrator in the same action or in a separate action brought for that purpose, including costs and fees for investigation and collection of any amount awarded in such action, in addition to any other relief to which the party may be entitled.

IN WITNESS WHEREOF, the parties hereto have each executed and delivered this agreement as of the day and year first above written.

ACCEPTED AND AGREED TO:                          ACCEPTED AND AGREED TO:

Falcon Air Express                               Direct Air and Tours, LLC.

By: _Nelson Ramz Sr_                             By: _Judy Tull_
Title: _GM_                                      Title: _Partner_
Date: _11/5/09_                                  Date: _11/05/09_

FALCON: _____ DATE: _11/5/09_    DIRECT: _____ DATE: _11/05/09_

11



## ACMI CHARTER CONTRACT
Contract # 09-137

---

### EXHIBIT "A"

**CHARGES**
Charter rate (ACMI to include all crew costs) shall be as follows:

$3,000 per block hour for up to 150 Block Hours per any aircraft
$2,800 per block hour for any block hour beyond 150 Block Hours per any aircraft.

**PAYMENTS**

DIRECT shall remit payment on each Tuesday of each week for the next 7 days of scheduled operations.

**PAYMENT REMITTANCE**
Payments to be made via wire to the following account:

| NON-ESCROW | | ESCROW | |
|---|---|---|---|
| Bank Name: | Wachovia | Bank Name: | Valley National Bank |
| Location: | Miami, FL | Location: | Wayne, NJ |
| ABA #: | 063000021 | ABA #: | 021 201 383 |
| Account #: | 2000040453314 | Account #: | 041074823 |
| Reference: | Contract 09-137 | Reference: | Contract 09-137 |
| Account Name: | Falcon Air Express | Account name: | Falcon Air Express |

**AIRCRAFT #1**
Operating Base:   PGD   November 17, 2009 – April 21, 2010
                  MYR   April 21, 2010 – November 17 (or thereabouts), 2010

Monthly Guarantee:   100 block hours

DIRECT shall assist FALCON in securing the special rate at the Hilton Garden in MYR.

**AIRCRAFT #2**
Operating Base:   MLB *(or in the Event that MLB base is not producing sufficient hours to meet the Guarantee, DIRECT will have the option of another base, contemplated as MYR. Base assignment to be determined prior to 1/1/2010.)*

March 11, 2010 – March 1, 2011

Monthly Guarantee:   150 block hours

****SIGNATURE PAGE TO FOLLOW*******

FALCON: _____ DATE: 11/5/09     DIRECT: _____ DATE: 11/05/09

12



## ACMI CHARTER CONTRACT
Contract # 09-137

---

IN WITNESS WHEREOF, the parties hereto have each executed and delivered this Agreement as of the day and year first above written. Parties agree to the terms of "Exhibit A" being fully integrated and incorporated into the Agreement 09-137.

Falcon Air Express

By: _____

Date: 11/5/09

Direct Air and Tours, LLC.

By: Judy Tull

Date: 11/05/09

FALCON: _____ DATE: _____   DIRECT: _____ DATE: _____

13



## ACMI CHARTER CONTRACT
### Contract # 09-137

---

### ADDENDUM #1

This will serve as an Addendum to the "ACMI" Charter Contract 09-137, signed on November 5, 2009 between Falcon Air and Direct Air. The purpose of this Addendum is to incorporate additional flights as described below. This Addendum shall be fully integrated and made part of charter contract 09-137. All terms and conditions outlined in charter contract 09-137 remain the same and shall be applicable to this Addendum.

### TERM OF OPERATIONS
Flights to be operated between April 1, 2010 and April 25, 2010.

### CHARGES
Rate shall be same as identified under Exhibit "A" of Charter Contract.

### PAYMENTS
Payments shall be same as identified under Exhibit "A" of Charter Contract.

### PAYMENT REMITTANCE
Payments to be made via wire to the following account:

| NON-ESCROW | | ESCROW | |
|---|---|---|---|
| Bank Name: | Chase | Bank Name: | Valley National Bank |
| Location: | Miami, FL | Location: | Wayne, NJ |
| ABA #: | 267084131 | ABA #: | 021 201 383 |
| Account #: | 843781345 | Account #: | 041074823 |
| Reference: | Contract 09-137 | Reference: | Contract 09-137 |
| Account Name: | Falcon Air Express | Account name: | Falcon Air Express |

### AIRCRAFT
Aircraft shall be MD-83 registration N836NK based in PGD.

Falcon Air Express

By: _____    Date: 2/25/10

Southern Sky & Tours LLC d/b/a Direct Air

By: _____    Date: 2/25/10

FALCON: _____ DATE: 2/25/10    DIRECT: _____ DATE: 2/25/10

1